NORTHWINDS OF WYOMING, INC.,
Appellant (Third–Party Defendant),

v.

PHILLIPS PETROLEUM COMPANY, a
Delaware corporation, Appellee
(Defendant Third–Party Plaintiff).

ONSHORE QUALITY CONTROL
SPECIALISTS, INC., Appellant
(Defendant),

v.

PHILLIPS PETROLEUM COMPANY, a
Delaware corporation, Appellee
(Defendant Third–Party Plaintiff).

Nos. 89–33, 89–34.

Supreme Court of Wyoming.

Sept. 8, 1989.

G.G. Greenlee of Murane & Bostwick, Casper, for appellant, Northwinds of Wyoming, Inc.

Jeffrey C. Brinkerhoff of Brown & Drew, Casper, for appellant, Onshore Quality Control Specialists, Inc.

Frank D. Neville and Stuart R. Day of Williams, Porter, Day & Neville, P.C., Casper, for appellee, Phillips Petroleum Co.

Before CARDINE, C.J., and
THOMAS, URBIGKIT and MACY, JJ.,
and HANSCUM, District Judge.

MACY, Justice.

These consolidated appeals are from a judgment of the district court finding that appellee Phillips Petroleum Company (Phillips) is contractually entitled to indemnification from appellants Onshore Quality Control Specialists, Inc. (Onshore) and Northwinds of Wyoming, Inc. (Northwinds) for its liability arising from an underlying action for personal injury and wrongful death. The district court determined that Phillips was entitled to indemnification, including attorneys' fees and costs, and correspondingly that appellants were not entitled to contribution from Phillips with respect to the settlement reached with the plaintiffs in the underlying action.

We affirm in part and reverse in part.

The parties have stipulated as to the issue to be resolved by this Court:

Did the District Court err by holding that Appellee Phillips Petroleum Company ("Phillips") is entitled to indemnity, including its costs and attorneys['] fees, under its agreements with Appellant Onshore Quality Control Specialists, Inc. ("Onshore") and Appellant Northwinds of Wyoming, Inc. ("Northwinds") and that Onshore and Northwinds are not entitled to contribution from Phillips for its proportionate share of the settlements made with the plaintiffs in the underlying actions? More simply stated: [M]ay Phillips be indemnified for its own negligence under the agreements with Onshore and Northwinds?

The facts in this case are undisputed, and the parties have stipulated to the relevant facts and to the course of proceedings in the district court. In connection with the

construction and maintenance of a natural gas pipeline in Converse County, Wyoming, Phillips, in addition to using its own employees, contracted with appellants for various services. Pursuant to the contracts, Onshore provided pipeline inspection services and Northwinds provided construction related services, including labor and equipment. A third contractor, David Markwardt (Markwardt), provided services as an independent pumper.[1]

On December 28, 1984, Lance Jung (Jung) and Roy Claude Meek (Meek), both employees of Northwinds, cut through a high-pressure natural gas pipeline which had not been completely depressurized. As a result, high-pressure gas escaped with tremendous force, causing the death of Meek and serious injury to Jung.

By amended complaint filed October 23, 1985, the personal representative of the estate of Meek commenced an action for wrongful death against Phillips, Onshore, Markwardt, and certain individual employees of Phillips and Onshore.[2] Onshore answered and asserted cross-claims for contribution against all co-defendants, including Phillips. On March 21, 1986, Jung filed a separate complaint against Phillips, Onshore, Markwardt, and individual employees of Phillips and Onshore. Jung alleged that his injuries resulted from the negligence of the defendants.

Phillips filed third-party complaints against Northwinds[3] in both the Meek and Jung actions, alleging that, pursuant to the contract between Phillips and Northwinds, Northwinds must indemnify Phillips. Similarly, Phillips cross-claimed against Onshore in both the Meek and Jung actions, again alleging a contractual right to indemnity. Thereafter, Northwinds asserted cross-claims for contribution against all defendants, including Phillips.

---

1. Markwardt, a defendant in the underlying action, did not pursue an appeal.

2. Northwinds was immune to direct suit by the plaintiffs by virtue of the immunity provided to contributing employers by the Wyoming Worker's Compensation Act. *See* Wyo.Stat. § 27–14–104 (1977).

3. Although the Wyoming Worker's Compensation Act bars an employee and those claiming under him from suing the employer, the Act does not bar other third-parties sued by the employee from bringing an action against the employer for indemnity based on a contract between the employer and the third-party. *Cities Service Company v. Northern Production Company, Inc.*, 705 P.2d 321 (Wyo.1985).

In December 1986, Onshore and Northwinds both moved for partial summary judgment on Phillips' claims for indemnity. After receiving memoranda from the parties and conducting a hearing, the district court issued a decision letter on February 23, 1987, ruling that the indemnity provisions in the respective contracts required Onshore and Northwinds to indemnify Phillips, including indemnification for Phillips' liability arising from its own negligence. Upon appellants' motions to reconsider, the district court issued a second decision letter on April 3, 1987, reaffirming its previous ruling.

On April 10, 1987, the defendants in the consolidated Meek and Jung actions reached a settlement agreement with the plaintiffs. Under the terms of the agreement, the defendants paid certain sums of money to the plaintiffs and the plaintiffs executed releases of all claims against all the defendants, including Phillips. Phillips did not contribute to the consideration given for the releases. The Meek and Jung actions were dismissed with prejudice on May 22, 1987, in accordance with a stipulation entered into by the parties. This stipulation preserved all rights of contribution and indemnity which the defendants could legally assert against each other.

The defendants additionally entered into a further stipulation concerning the parties' percentages of respective fault for the damages to the plaintiffs. The defendants agreed that the fault should be allocated as follows:

| | |
|---|---|
| Phillips (including its individual employees) | 35% |
| Onshore (including one of its employees) | 35% |
| Northwinds (including one of its employees) | 20% |
| Markwardt | 10% |
| TOTAL | 100% |

These parties also stipulated that, if it should be ultimately determined that the indemnity provisions in the contracts do not entitle Phillips to indemnification for its own negligence, then Phillips will reimburse Onshore and Northwinds for thirty-five percent of the total amount paid to the plaintiffs.

After a hearing pursuant to the stipulation, the district court entered its judgment and order on December 29, 1988, which essentially incorporated both the defendants' stipulation and the decision letter determinations that Phillips was entitled to indemnity for its own negligence and that Northwinds and Onshore were not entitled to contribution from Phillips. The district court further found and ordered that, pursuant to the indemnity agreements, Onshore and Northwinds must reimburse $84,412.28 to Phillips for attorneys' fees and costs.[4] Northwinds and Onshore then perfected this appeal.

The identical indemnification provisions in the contracts between Phillips and Northwinds and Phillips and Onshore provide:

> Contractor shall indemnify and hold Company harmless from any and all claims, liabilities and causes of action of, to, or by third persons, including Contractor, his subcontractors, or the employees of either, for injury to or death of any person and for damage to or destruction of any property, resulting directly or indirectly from any and all acts or omissions of Contractor, his subcontractors, or of anyone directly or indirectly employed by either of them in connection with the performance of any work provided for herein and regardless of whether such injury death, damage and/or destruction is contributed to by the negligence of Company, its agents, servants, and/or employees, and on behalf of Company and in Company's name will handle or defend at its own expense any claim or litigation in connection therewith. The indemnity provided for in this paragraph shall have no application to any claim, liability or cause of action resulting from the sole negligence of Company, its agents, servants, and/or employees.

---

4. In their stipulated statement of the case upon appeal, the parties state that the amount and reasonableness of the attorneys' fees and costs are not issues on appeal. Northwinds, however, contests its liability as to certain expenses. *See infra.*

The question presented by the above provision is simply whether, under the contracts, Phillips is entitled to indemnity for its own negligence where the plaintiffs' injuries and death in the underlying action were the result of the negligence of both Phillips and appellants. The district court, although observing that it was an "extremely difficult question[ ]," determined that Phillips was entitled to such indemnity. We are of the opinion, however, that the provision does not clearly state that Phillips is entitled to indemnity for its own negligence where it has been concurrently negligent, and, therefore, the district court's decision to that effect cannot be sustained.

Onshore contends that the agreement only requires Onshore to indemnify Phillips for Onshore's negligence; that the indemnification obligation is limited by the words "of Contractor"; that the provision says nothing about indemnification for Phillips' own negligence except to state that the indemnity does not apply to Phillips' "sole" negligence; and that the provision says nothing about concurrent negligence. Onshore argues that the provision, stripped to its essentials, could be read in this manner:

> Onshore shall *indemnify* and hold Phillips harmless from all claims *resulting from the acts of Onshore [contractor] and* regardless of whether *such* injury is contributed to by the negligence of Phillips and on behalf of Phillips and in Phillips['] name will *handle or defend* at its own expense any claim *in connection therewith.*

(Emphasis added by Onshore.) Onshore suggests that the agreement imposes two distinct obligations upon Onshore: (1) indemnity for Onshore's own negligence, and (2) a duty to defend Phillips. Onshore emphasizes that the agreement does not specifically state that Onshore must indemnify Phillips for Phillips' concurrent negligence.

Northwinds' argument is similar, and it additionally suggests that the indemnity provision had the purpose of protecting Phillips from vicarious and derivative liability. Northwinds contends that the intent of the indemnity provision was to protect Phillips from liability which arises from the negligent acts of others (i.e., vicarious liability) and not to protect Phillips against its own negligence. Northwinds identifies what it considers to be the critical clause of the provision and synthesizes it in this manner:

> Contractor [Northwinds] shall indemnify and hold Company [Phillips] harmless [a]gainst * * * injury or death of any person * * * resulting directly or indirectly from any and all acts or omissions *of Contractor * * * in connection with the performance of any work *provided for herein.*

(Emphasis added by Northwinds.) Northwinds further argues that the clause, "regardless of whether such injury death, damage and/or destruction is contributed to by the negligence of Company," is not adequate to impose an obligation upon Northwinds to protect Phillips from Phillips' own negligence. Northwinds reads that clause as simply providing assurance to Phillips that Phillips' own negligence will not affect Phillips' right to protection for any vicarious or derivative liability it may incur because of the negligence of Northwinds. Both appellants assert that the final sentence of the provision simply means what it says—that the indemnity provision is inapplicable to claims resulting from the sole negligence of Phillips—and that an added duty to indemnify Phillips in the case of concurrent negligence cannot be implied or inferred from the express denial of any indemnity obligation where Phillips alone is negligent.

Phillips, of course, argues that the provision requires indemnification for its own negligence unless the liability results solely from its negligence. Phillips analyzes the indemnity language in this manner:

> 1. That the Contractor agrees to indemnify Company as follows:
>
> (a) from any and all claims....
>
> (b) for injury to or death of any person....
>
> (c) resulting directly or indirectly from any and all acts or omissions of Contractor....

(d) *regardless of whether such injury, death, damage and/or destruction is contributed to by the negligence of the Company.*

and

(e) In the event any claim resulted from the sole negligence of the Company, the indemnity language would have no application.

(Emphasis added by Phillips.) Although Phillips' reading of the provision is persuasive, we think the interpretations offered by appellants are tenable, and therein lies the problem for Phillips.

We agree with the parties and the district court that the controversy in this case is controlled by our decision in *Wyoming Johnson, Inc. v. Stag Industries, Inc.*, 662 P.2d 96 (Wyo.1983).[5] In *Wyoming Johnson, Inc.*, a general contractor (and its insurer) sought indemnity for its own negligence from a subcontractor. The general contractor paid a personal injury settlement upon the claim against it brought by an employee of the subcontractor. The general contractor argued that its contract with the subcontractor specifically provided that the subcontractor would indemnify the general contractor for its own negligence. The indemnity provision relied upon by the general contractor provided that the subcontractor would

"*indemnify Contractor against and save him harmless from any and all claims, suits or liability* for injuries to property, injuries to persons including death and from any other claims, suits or liability *on account of any act or omission of Subcontractor, or any of his officers, agents, employees or servants.*"

*Id.* at 98 (emphasis in original). We held that the above provision limited the subcontractor's indemnification obligation to *acts of the subcontractor* and that the general

contractor's claim for indemnification for its own negligence must fail under this provision. The general contractor in that case, however, also relied upon the fact that its contract with the subcontractor incorporated by reference the terms of the prime contact between the general contractor and the owner, which contained an indemnity provision stating in part:

"To the fullest extent permitted by law, the Contractor * * * *shall indemnify and hold harmless the Owner* and the Architect * * * and their agents and employees *from and against all claims*, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, * * * and (2) is *caused in whole or in part by any negligent act or omission of the Contractor, * * * anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable,* regardless of whether or not it is caused in part by a party indemnified hereunder."

*Id.* at 98 (emphasis in original). We noted that the latter provision was much broader than the provision in the contract between the general contractor and the subcontractor because it provided indemnity for " 'all claims, damages, losses and expenses' " while the former provision, similar to the provisions in the instant case, limited the indemnity to " 'acts or omissions of the [S]ubcontractor.' " *Id.* at 99. We held, however, that the incorporation by reference of the prime contract into the contract between the contractor and the subcontractor was not a clear and unequivocal agreement to indemnify the general contractor for its own negligence. *Id.* at 99.[6]

---

**5.** Neither party suggests that this is a case to which Wyo.Stat. § 30–1–131 (1977) applies. Section 30–1–131 embodies the legislative public policy determination that contract provisions indemnifying against loss or liability resulting from one's own negligence in an agreement pertaining to wells for oil, gas, or water or mines for minerals shall be void and unenforceable. *See Cities Service Company,* 705 P.2d at 326. We agree that § 30–1–131 has no applica-

bility to the instant case. *See also* Wyo.Stat. § 30–1–132 and *Reliance Insurance Company v. Chevron U.S.A., Inc.,* 713 P.2d 766 (Wyo.1986) (§ 30–1–131 construed to cover only services closely related to well drilling).

**6.** Although the case does not directly so state, we recognize that *Wyoming Johnson, Inc.* could be read as intimating that the language of the prime contract, standing alone and not incorpo-

In reaching our decision in *Wyoming Johnson, Inc.*, we stated the applicable law in the following passages:

"A contract of indemnity purporting or claimed to relieve one from the consequence of his failure to exercise ordinary care must be strictly construed. Accordingly, it is frequently stated as the general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it. Mere general, broad, and seemingly all-inclusive language in the indemnifying agreement has been said not to be sufficient to impose liability for the indemnitee's own negligence. It has been so held, for instance, with regard to the words 'any and all liability.'" 41 Am.Jur.2d, *Indemnity*, § 15, pp. 699, 700 (1968).

"Where the injury was caused by the concurrent negligence of the indemnitor and the indemnitee, the courts have frequently read into contracts of indemnity exceptions for injuries caused in part by the indemnitee, although there is authority to the contrary. Even the fact that the contact requires the indemnitor to hold the indemnitee harmless from damage caused by the indemnitor's 'negligent acts and omissions' has been held insufficient to make the indemnity clause applicable in a case where the indemnitee's negligence concurred with that of the indemnitor to cause the injury." 41 Am.Jur.2d, *Indemnity*, § 16, pp. 703, 704 (1968).

*Id.* at 99. We further said in that case:

Generally, contracts exculpating one from the consequences of his own acts are looked upon with disfavor by the courts. Therefore, an agreement for indemnity is construed strictly against the indemnitee, particularly when the indemnitee was the drafter of the instrument. If the indemnitee means to throw the loss upon the indemnitor for a fault in

rated by reference, and without the limitation imposed by the *acts of subcontractor* phrase, could be sufficient to impose an obligation to

which he himself individually shares, he must express that purpose beyond any peradventure of doubt. The test is whether the contract language specifically focuses attention on the fact that by the agreement the indemnitor was assuming liability for indemnitee's own negligence.

*Id.* at 99 (citations omitted).

Applying a strict construction to the indemnity provision in the instant case, we are persuaded that Phillips, as drafter of the provision, did not, in clear and unequivocal terms, express that Onshore and Northwinds would indemnify Phillips for Phillips' own negligence. Appellants, with reference to *Wyoming Johnson, Inc.*, 662 P.2d 96, rely on the language in the provision which appears to limit the indemnity to *acts of Contractor*. Appellants further contend that the phrase "regardless of whether such injury [or] death * * * is contributed to by the negligence of Company" refers to the succeeding duty to defend clause or, alternatively, that it operates to insure appellants will indemnify Phillips for appellants' negligence even if Phillips is concurrently negligent. In any event, the clause limiting the indemnity to *acts of Contractor* and the later clause stating *regardless of whether Company contributed to the negligence* are inconsistent and ambiguous if read together.

Phillips conversely urges that the latter language, as bolstered by the inference to be obtained by the final sentence, imposes an obligation upon appellants to indemnify Phillips for all claims unless Phillips was solely negligent. Phillips' reliance, however, on any inference to be obtained from the final sentence of the provision, which excludes any indemnity obligation where Phillips is solely negligent, is misplaced. In *Cities Service Company v. Northern Production Company, Inc.*, 705 P.2d 321, 327 (Wyo.1985), we said, with respect to a similar provision:

indemnify the indemnitee for its own negligence.

The agreement is not clear and unambiguous. It is obscure in its meaning when it excludes from indemnity the sole negligence of Cities Service but does not address the situation in which the negligence of Cities Service concurs with the negligence of Northern Production in causing the employee's injury.

■ If we were applying a broad construction to the provision, we might be inclined to accept Phillips' interpretation, after resolving the ambiguities. As drafted, however, and no matter how it is read, the provision simply does not state, except possibly by inference, that appellants must indemnify Phillips for Phillips' own negligence in the case of concurrent negligence of the indemnitee and indemnitor. Under the strict construction required by *Wyoming Johnson, Inc.,* 662 P.2d 96, the language of the provision is not sufficiently clear and unequivocal to throw the loss upon the appellants/indemnitors for the fault attributable to Phillips as indemnitee. We hold, therefore, that Phillips was not entitled to indemnification from appellants for its own negligence and that appellants are accordingly entitled to contribution from Phillips for Phillips' share of the settlements reached with the plaintiffs.

As a final matter, Northwinds advances the argument that, under the terms of the indemnity provision, Phillips was not entitled to a defense at appellants' expense with respect to the claims against Phillips for its own negligence.[7] The district court determined that the indemnity agreements entitled "Phillips to be indemnified for its reasonable attorneys' fees and costs expended by it in the defense of the plaintiffs'[ ] claims in the underlying actions." The record does not indicate what percentage of the fees and costs was expended by Phillips in defense of the claims against Phillips as opposed to expenditures with respect to the claims against appellants.

■ We first observe that, with respect to the attorneys' fees and costs, Phillips is not seeking indemnification for its own negligence but rather is simply seeking to enforce an alleged contractual duty to defend. Therefore, the rule of strict construction does not apply, and the duty to defend provision is subject to a broad rule of construction. *See Cities Service Company,* 705 P.2d at 328 (rule of strict construction applies only when indemnitee seeks indemnification for its own negligent acts). Thus, we consider the contract as a whole, placing a broad construction upon it which reasonably gives effect to the intention of the parties as expressed by its terms in light of the applicable law. *Id.* at 328; *Wyoming Game and Fish Commission v. Mills Company,* 701 P.2d 819 (Wyo. 1985).

■ Returning to the subject provision, we note the following phrases: (1) "and regardless of whether such injury death, damage and/or destruction is contributed to by the negligence of Company," and (2) "and on behalf of Company and in Company's name will handle or defend at its own expense any claim or litigation in connection therewith." We are of the opinion that this language, regardless of whether the first quoted phrase is considered to modify the words preceding it or to apply to the quoted phrase following it, indicates an intention that appellants were to defend claims brought against the parties jointly. This interpretation is also supported by and gives effect to the final sentence of the provision which eliminates any obligation to indemnify or defend where Phillips was solely negligent. In other words, the final sentence indicates that the duty of appellants to defend does not extend to situations where the negligence was solely attributable to Phillips. We recognize that our interpretation of the duty to defend resembles Phillips' argument with respect to indemnification for its own negligence. Again, however, in analyzing the duty to defend, we are applying a broad or liberal rule of construction in order to reasonably give effect to the intention of the parties, and we are not bound by the "clear and

---

7. Onshore, in its brief, concedes that the agreement required appellants to pay for Phillips' defense.

unequivocal rule" applied to the primary issue of Phillips' entitlement to indemnity for its own negligence. We hold, therefore, that the district court correctly determined that Phillips was entitled to its reasonable attorneys' fees and costs expended in defense of the underlying action.

Affirmed in part and reversed in part.

CARDINE, Chief Justice, dissenting.

I dissent. I would have affirmed the district court judge. The essence of this opinion is found in the statement, "We are of the opinion, however, that the provision does not clearly state that Phillips is entitled to indemnity for its own negligence where it has been concurrently negligent * * *." Majority opinion at p. 756. The provision referred to provides:

"Contractor shall indemnify and hold Company harmless from any and all claims * * * regardless of whether such * * * is *contributed to* by the negligence of Company * * *. The indemnity provided for in this paragraph shall have no application to any claim * * * resulting from the sole negligence of Company." (emphasis added)

The concurrent negligence of Phillips contributed to the final result. The provision is clear. Phillips is entitled to indemnity for any loss or claim unless caused by Phillips' sole negligence.