**Frank J. GRECO, Plaintiff,**

v.

**HALLIBURTON COMPANY, Defendant.**

**No. C87–0151–B**

United States District Court,
D. Wyoming.

Dec. 2, 1987.

Leonard J. Haxby, Butte, Mont., Robert W. Tiedeken, Cheyenne, Wyo., for plaintiff.

John W. Ross, Anderson, Brown, Gerbase, Debull, Fulton, Harman and Ross, Billings, Mont., Steven R. Helling, Murane & Bostwick, Casper, Wyo., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT

BRIMMER, Chief Judge.

This matter comes before the Court upon defendant Halliburton Company's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Both plaintiff and defendant have submitted matters outside the pleadings for the Court's consideration on the motion. Thus, pursuant to Fed.R.Civ.P. 12(b), the motion to dismiss is converted to a motion for summary judgment. *See Nichols v. United States*, 796 F.2d 361 (10th Cir.1986).

Plaintiff Frank Greco worked as a bulk plant operation warehouseman for defendant Halliburton Company ("Halliburton") in Worland, Wyoming. Greco was fired from his position at Haliburton October 1, 1985, after he refused to submit to a urinalysis test for drugs. He then brought this action alleging wrongful discharge, breach of covenant of good faith and fair dealing, constitutional violations, and fraud. Plain-

tiff has voluntarily dismissed the fraud claim.

When Frank Greco came to work on February 10, 1984, he signed an employment contract with Halliburton. The contract stated: "This contract may be terminated at any time at the option of either the employer or the employee upon notice to the other party of the intention to exercise such option." He also signed a patent agreement which recited that Greco understood that his employment "may be terminated at the will of the company...."

On July 19, 1984, Halliburton issued a "Safety and Loss Prevention Contraband Policy" to all of its employees. The policy provided that:

> The use, possession, transportation, or sale of narcotics, illegal drugs or drug paraphernalia by any employee while on duty, while on Company premises or in any Company vehicle, or while on any job site of a customer, is prohibited.
>
> \* \* \* \* \* \*
>
> During an investigation, unless prohibited by state statute, employees may be requested to cooperate in urinalysis tests.... Employees may also be requested to cooperate in urinalysis and/or blood tests on a spot check basis. Employees have the right to refuse being searched or having their personal effects searched or to cooperate in the requested tests; however, refusal to such searches or to cooperate in such lawfully permitted tests by any employee will be cause for disciplinary action up to and including immediate discharge.
>
> Any employee determined by the Company to be in violation of this policy, without an explanation satisfactory to the Company, will be subject to disciplinary action up to and including immediate discharge.

On August 17, 1984, Greco signed a copy of the contraband policy, acknowledging that he had read and understood the terms of the policy. On October 1, 1985, all of the Worland, Wyoming, Halliburton employees, including Greco, were asked to submit to urinalysis to test for the presence of drugs. All of the employees except

Greco agreed to take the test. When Greco refused to take the test he was discharged.

The present case is a diversity action based on both tort and contract theories. The parties agree that the substantive law of Wyoming controls. The employment contract was executed and performed in Wyoming; the breach, if any, occurred in Wyoming; and any injury brought about by tortious conduct, if any, occurred in Wyoming. The parties are undoubtedly correct that Wyoming law controls this case. *See Klaxon v. Stentor*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Duke v. Housen*, 589 P.2d 334 (Wyo.), *reh. denied*, 590 P.2d 1340 *cert. denied, sub nom. Housen v. Duke*, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979); *J.W. Denio Milling Co. v. Malin*, 25 Wyo. 143, 165 P. 1113 (1917).

"Wyoming follows the common-law rule that either party may terminate an employment at will contract (one without a definite term) at any time for any reason or without reason, and that such is not violative of any implied covenant of good faith and fair dealing." *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 704 (Wyo.1985) (citations omitted). Tenure in employment may arise from "rules or regulations having the force of a contract." *See Carlson v. Bratton*, 681 P.2d 1333, 1339 (Wyo.1984). Thus the Court must decide whether the contraband policy set forth rules and regulations having the force of a contract, and if so, whether the employer violated the terms of that contract in discharging plaintiff.

A personnel policy given to an employee may change the employer's unfettered right to discharge an employee even though the policy is distributed after employment has begun. *See Leithead v. American Colloid Co.*, 721 P.2d 1059 (Wyo.1986); *Mobil Coal*, 704 P.2d at 707. In *Leithead* and *Mobil Coal*, the Wyoming Supreme Court found that personnel handbooks given to employees after they had been working for the employer changed otherwise at-will employment to a contract wherein the employees could be dismissed

only for cause. In both cases, the handbooks specified procedures to be followed before an employee could be dismissed. In both cases the Court found that the policies were supported by consideration flowing to the employer in form of "an orderly, cooperative and loyal work force." *Leithead,* 721 P.2d at 1059; *Mobil Oil,* 704 P.2d at 707 *quoting Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880, 892 (1980). The same benefit undoubtedly runs to the employer in this case, and arguably there is a benefit to the employee in the form of a safer workplace.

The existence of an employment manual or personnel policy will not make employment other than at will in all instances. *Mobil Coal,* 704 P.2d at 706. As the Wyoming Supreme Court explained in *Mobil Coal:*

> Each case must be considered on its own merits. Some handbooks or manuals may not contain provisions which negate the employment at will. Some handbooks or manuals may be ambiguous or may not have apparent meaning, making the determination of their effect on at will employment a question of fact. Normally the construction and interpretation of a contract is for the court as a matter of law.

*Id.*

The contraband policy distributed to employees at Halliburton did not change the nature of the employment contract between plaintiff and his employer. The policy does not set up procedures to be followed for discipline or for discharge. It does not create a right to a hearing or to an opportunity to rebut charges of a violation of the policy. Halliburton is left with plenary discretion to take disciplinary action up to and including immediate discharge when an employee is determined by Halliburton to be in violation of the contraband policy "without an explanation satisfactory to the Company...."

■ I conclude that regardless of whether the contraband policy became a part of Greco's employment contract, Greco was employed at-will. He was not em-

ployed for a definite term or duration, and nothing in the contraband policy imbued him with tenure in his position. Nor did the policy set out procedures that had to be followed before termination. The policy made it clear that immediate discharge was possible if any employee refused to submit to drug testing at any time. Plaintiff admits that he was aware of the policy and admits that he refused to take a drug test when requested by his employer. Halliburton did not take any action in violation of the terms of the contraband policy.

However, plaintiff contends that if he was employed at-will, his dismissal for refusal to submit to drug testing breached an implied covenant of good faith and fair dealing in his employment contract with Halliburton. Recently, several jurisdictions have recognized exceptions to the employment at-will rule based upon public policy considerations or implied contract terms, including an implied covenant of good faith and fair dealing. *See Rompf v. John Q. Hammons Hotels, Inc.,* 685 P.2d 25, 27–28 (Wyo.1984) (citing cases). To date, the Wyoming Supreme Court has reserved a decision on whether termination of employment under an at-will contract might, under the appropriate circumstances, breach an implied covenant of good faith and fair dealing. *See id.* at 28; *see also Mobil Coal,* 704 P.2d at 709 (Rose, J., specially concurring). That Court has likewise declined to recognize a tort action for wrongful discharge premised on violation of public policy. *Allen v. Safeway Stores Inc.,* 699 P.2d 277, 284 (Wyo.1985).

■ This case does not present circumstances warranting relief under either exception to the employment at-will doctrine. Even if I could conclude that a covenant of good faith and fair dealing should be implied in plaintiff's employment contract, there is nothing about the conduct of Halliburton in dismissing plaintiff that suggests that Halliburton employees acted with anything other than good faith. The company had a valid purpose in implementing the contraband policy. The policy expressed a legitimate concern about the safety of its employees and the public. Plaintiff knew

that it was the Company's policy to keep the workplace safe by prohibiting drug use on Company premises by Halliburton employees. He knew that he might have to submit to periodic drug tests. He was not singled out for a test—to the contrary, all of the Worland, Wyoming, Halliburton employees were asked to take the test, and only plaintiff refused. In short, there was nothing untoward in what Halliburton did. This is not a situation that requires implication of a covenant of good faith and fair dealing in the plaintiff's employment contract.

■ Wyoming has not yet recognized a cause of action for wrongful discharge based upon a violation of public policy. Even if such an action had been recognized, plaintiff cannot support his contention that termination for refusal to submit to urinalysis required by his employer violates public policy against invasions of privacy. I cannot conclude that Halliburton's attempts to ensure a drug-free workplace are against the public policy of the State of Wyoming. *Cf. Monroe v. Consolidated Freightways, Inc.*, 654 F.Supp. 661, 664 (E.D.Mo.1987) (Court reluctant to find that efforts to assure a drug-free environment contravene the public policy of Missouri).

■ Plaintiff's constitutional claims are meritless. The proscriptions in the constitutions of the United States and the State of Wyoming against invasion of privacy, taking property without due process, and unauthorized searches or seizures apply only to government or state action. *See id.* at 663 (proscription against unauthorized searches and seizures embodied in Constitution applies exclusively to government or state action); *see generally Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349–51, 95 S.Ct. 449, 452–53, 42 L.Ed.2d 477 (1974) (state action requirement). The plaintiff seeks a remedy for the conduct of a private employer. Although Halliburton's request that plaintiff submit to drug testing was concurrent with a request that plaintiff submit to a physical examination required by the Department of Transportation, that is not enough to make Halliburton a state actor subject to constitutional

prohibitions against unreasonable searches and seizures, taking, or invasion of privacy. *Id.* at 350, 95 S.Ct. at 453 (extensive government regulation does not necessarily convert actions of a private business into state action for purposes of the Fourteenth Amendment). Halliburton's contraband policy was not implemented in response to government regulation, rather, it was implemented out of Halliburton's desire "to help provide for the safety and security of employees and others affected by the Company's operation...."

Halliburton has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. It is therefore

ORDERED that summary judgment be, and the same hereby is entered for defendant Halliburton Company, and that the plaintiff's complaint be, and the same hereby is, dismissed with prejudice.

FURTHER ORDERED that the parties bear their own costs.